UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MERRI ELLEN MILLER,               )
                                  )
              Plaintiff,          )
                                  )
      v.                          ) Case No.: 1:16-cv-03504-DML-JMS
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of the Social Security, )
Administration,                   )
                                  )
              Defendant.          )

## Decision on Complaint for Judicial Review

Plaintiff Merri Ellen Miller applied in September 2012 for Disability

Insurance Benefits under Title II of the Social Security Act, alleging she has been

disabled since May 2012.  Acting for the Commissioner of the Social Security

Administration following a hearing on July 7, 2015, administrative law judge

Michael Carr issued a decision on August 25, 2015, that Ms. Miller is not disabled.

The Appeals Council denied review of the ALJ's decision on November 15, 2016,

rendering the ALJ's decision for the Commissioner final. Ms. Miller timely filed this

civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.  The

parties consented to the magistrate judge conducting all proceedings and ordering

the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Ms. Miller asserts that the Commissioner's decision must be reversed and

remanded because (1) the ALJ did not address her counsel's post-hearing

submission regarding vocational evidence; (2) the ALJ erred in his evaluation of a

medical opinion; and (3) the ALJ's credibility analysis is flawed because he did not address Ms. Miller's lengthy work history.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Miller's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. Miller is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The

third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

 If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Miller was born in 1962, was 50 years old as of her alleged disability onset date in May 2012, and was 53 years old at the time of the ALJ's decision. Ms. Miller has a lengthy work history. Her earnings record shows that she accrued covered earnings in every quarter since she was 21 years old. (R. 224-25). The most recent work before her disability onset date was as a distribution clerk with the

United States Postal Service. That job required standing 8 hours per work day and longer if one worked overtime, and a lot of lifting (an average of 20 to 25 pounds through the work day), pushing, pulling, bending, twisting, and stooping.  (R. 42-45).

At step one, the ALJ found Ms. Miller had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ identified certain severe impairments (obesity, degenerative disc disease of the lumbar spine, residuals of deep vein thrombosis, and anxiety and affective disorders), but found that no listing was met or medically equaled.  Ms. Miller does not challenge the ALJ's findings at steps one through three.

The ALJ next determined Ms. Miller's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. He imposed substantial limits on Ms. Miller's physical and mental capabilities. The RFC limits Ms. Miller to light work as defined at 20 C.F.R. § 404.1567(b), as modified by limits on standing/walking and lifting/carrying, postural and climbing restrictions, and accommodations because of mental impairments and pain:

- sit/stand option while on task at work station, with alternating to sitting every two to three minutes after every hour of standing, alternating to sitting for two to three minutes after every hour of walking, and alternating to standing for two to three minutes after every hour of sitting.

- standing and/or walking for four hours in an 8-hour workday

- push/pull and lift/carry no more than 20 pounds at a time and frequently up to 10 pounds, as provided in 20 C.F.R. § 404.1567(b)

- occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs

- never climbing ropes, ladders, or scaffolds, and no exposure to unprotected heights or moving mechanical parts, and no motor vehicle operation

- "ability to understand, remember and carry out simple, routine tasks (due to problems with concentration) and, with regard to both using judgment and dealing with changes in the work setting, the claimant is capable of simple work related decisions. The claimant can occasionally tolerate contact with supervisors, coworkers, and the general public."

(R. 25-26).

The ALJ found Ms. Miller cannot perform her past relevant work because its demands exceed her functioning. The ALJ then concluded, based on the testimony of a vocational expert, that Ms. Miller is capable of the following work existing in significant numbers in the economy: Office Helper (DOT #239.567-010), Routing Clerk (DOT #222.587-038), and Checker (DOT #222.587-038). Accordingly, he found at step five that Ms. Miller was not disabled.

## II.    Ms. Miller's Assertions of Error

Ms. Miller raises several alleged errors. She argues that the ALJ erred because (1) the credibility analysis is flawed; (2) the evaluation of a medical opinion is flawed; and (3) he did not address her counsel's post-hearing submission regarding vocational evidence. The court will address these matters in turn below.

### A. Ms. Miller has not demonstrated that the credibility determination is patently erroneous.

Because the ALJ sees and hears the claimant, his assessment of the claimant's credibility is entitled to special deference from the court. *Craft v. Astrue,*

539 F.3d 668, 678 (7th Cir. 2008).  The court's role is limited to examining "whether the ALJ's determination was reasoned and supported," and it may not overturn the ALJ's finding unless it is "patently wrong."  *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008).  "It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be patently wrong and deserving of reversal."  *Id.* (internal citations omitted).

Ms. Miller testified about the limits on her abilities because of her physical impairments and the pain they cause her (including the effects of her pain medication) and because of her mental impairments and their effects.  She stated that she can walk only about 50 feet before her legs cramp and she becomes short of breath, and she can stand or sit for only about 10 or 15 minutes at a time because of the pain in her legs and in her back.  She testified that she can lift or carry objects only if they weigh no more than 5 to 10 pounds.  She stated that her pain medication interferes with her concentration and that she takes naps during the day for relief, sometimes for up to two hours.  She also testified about feelings of anxiety around people, her lack of friends, and about socializing only at times when a few family members visit.

The ALJ found, however, that her description of her limitations was out of proportion to the medical evidence and was inconsistent with other evidence that Ms. Miller, her niece, and a neighbor had provided to the Agency in disability function reports.  He noted, among other things, that (a) she had denied a need for pain medication in some of her medical records, (b) the objective findings on

physical examinations were generally normal (normal range of motion in her spine and in her upper and lower extremities, no strength deficits in her upper and lower extremities, and normal motor skills, coordination, balance, gait, and station), and (c) after her September 2012 six-day hospitalization and surgical treatment for bilateral deep vein thrombosis, in which she underwent right-side angioplasty and Angiojet Rheolytic thrombolysis of the right lower extremity venous system, diagnostic tests were negative for recurrence of deep vein thrombosis and she was being successfully treated with blood-thinner medication. The ALJ also stressed that her description at the hearing of daily activities and socialization activities was inconsistent with disability function reports in the record and reports to medical providers. He emphasized:

> [I]n other statements for the record the claimant and her niece and neighbor allowed that she takes care of her own personal needs, takes care of the cats and two dogs, prepares the meals daily, does a variety of household chores and yard work, drives, shops weekly for up to two hours, visits with her neighbor 10 to 20 hours a week, plays with the neighbor's children, uses a computer, plays computer games, works puzzles and crosswords, reads all the time, watches television, manages her own finances, follows instructions very well, pays attention as long as needed, and gets along with authority figures. . . . [She also] informed medical sources that she reads books, listens to audio books, uses Face Book, watches television, takes care of her own personal needs without difficulty, spends time with the kids next door, and does all of the cooking, cleaning and laundry.

(R. 28).

Ms. Miller attacks the credibility analysis on two grounds. The court rejects both of her arguments. First, she contends that the ALJ did not acknowledge her testimony that she shops "only after waiting to go [into the store] for fear people will

attack her" and that her household cleaning tasks are done with intermittent breaks." (Dkt. 15 at p. 24). This argument fails to take into account the ALJ's wealth of reasons for doubting Ms. Miller's testimony, as highlighted above, both with respect to socialization activities and the amount of activities she engages in, including household chores. Second, she contends that the credibility determination cannot stand because the ALJ did not acknowledge her lengthy, 29 consecutive-years work history. The Seventh Circuit has rejected that view. Work history is one factor, among many, to be considered in evaluating credibility. But a stellar work history is not dispositive of the claimant's credibility. *Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016). When an ALJ has provided substantial evidence to support his negative credibility determination, his silence about the claimant's lengthy work history provides an insufficient basis for finding that it is patently wrong. *Id.* That is the case here.

## B. The ALJ's evaluation of Dr. Carter's opinion is supported by substantial evidence.

Ms. Miller challenges the ALJ's evaluation of an opinion provided by Dr. Weston Carter, a family physician. Dr. Carter provided a medical source statement dated January 16, 2014, the same date he certified that Ms. Miller met the qualifications to receive a disability parking placard from the state bureau of motor vehicles. (R. 622-27; R. 29). He completed a form describing Ms. Miller's functioning because of chronic bilateral leg pain. (R. 624). He opined that she has constant leg pain and poor exercise tolerance and as a result can sit 5 hours, stand 1 hour, and walk 1 hour in an 8-hour work-day. He opined that she requires frequent

changes from a seated position per hour or rest periods. He also opined that she has lifting and carrying difficulties and can lift/carry only up to 5 pounds frequently and up to 20 pounds occasionally. (R. 625). Finally, he wrote that her pain would interfere with her ability to sustain attention and concentration in a work day.

The ALJ determined that Dr. Carter's opinions were inconsistent with the "generally mild to normal findings on physical examinations," the lack of the necessity for ongoing treatment, and the breadth of Ms. Miller's daily activities, including the activities that the ALJ addressed above—caring for personal needs and the needs of her pets, walking her dogs in her yard, playing with neighborhood children, doing a variety of household chores, as well as cooking, yardwork, shopping, driving, working puzzles, and using a computer.

Ms. Miller contends that because Dr. Carter is the only doctor who had examined or treated Ms. Miller *and* who provided an opinion regarding her residual functional capacity, it necessarily was error for the ALJ to have given little weight to his opinion. The court disagrees.

The ALJ's contrast of Dr. Carter's opinion with the ALJ's overall review of the medical evidence and of Ms. Miller's activities provided a sufficient basis for his decision to not credit Dr. Carter's opinion. The ALJ considered that Ms. Miller's deep vein thrombosis had not recurred since her September 2012 hospitalization and treatment and that she had been continually monitored regarding blood thinners to combat clotting. He also considered objective findings on examination by a state agency physician, none of which was contradicted by other medical evidence.

Indeed, the record does not contain objective examination findings by Dr. Carter, likely the reason the ALJ characterized Dr. Carter's opinion as not only inconsistent with the medical evidence but also as "speculation." While Ms. Miller suggests that the state agency examining physician's objective findings, and the reviewing physician's opinion about her functioning based on the record evidence available at that time, should have been discounted because the examining doctor assessed only her "pulmonary" impairments, Ms. Miller's pulmonary impairments are the alleged source of her leg pain. (*See* R. 569).

The court agrees with the Commissioner that the ALJ sufficiently articulated his reasons for assigning little weight to Dr. Carter's opinion. *See Elder v. Astrue,* 529 F.3d 408, 416 (7th Cir. 2008) (internal citation omitted) ("[B]ecause the ALJ 'minimally articulated' his reasons for declining to afford [the treating doctor's] medical opinion 'substantial weight,' we see no fault in his determination.")

### C. Ms. Miller has not demonstrated harmful error in the ALJ's evaluation of the VE's opinion.

Ms. Miller argues that the ALJ's "failure to rule on post-hearing objections to the vocational expert's testimony and qualifications" requires remand. Her argument is focused on one of her post-hearing objections: that the opinion about particular jobs the VE testified a person with Ms. Miller's vocational profile and RFC could perform is erroneous because O*NET identifies those jobs as semiskilled to skilled jobs and not as unskilled jobs, to which Ms. Miller is limited under the RFC. The Commissioner contends that any error in the ALJ's omission to address the post-hearing objection about O*NET's identification of the jobs as requiring a

skill level higher than that under the Dictionary of Occupational Titles is harmless because the claimant's post-hearing objections are essentially the same objections she made before the hearing, to which the ALJ had responded in writing to Ms. Miller's representative.  The court agrees with the Commissioner.

Before the hearing, the ALJ addressed in writing Ms. Miller's objection to the use of the Dictionary of Occupational Titles for the VE's estimate of job numbers and her demand that the ALJ order the VE to produce prior to the hearing "data or data sources and methodology" upon which the VE intends to rely in giving opinions about job numbers in the economy.  (R. 322-23).  The ALJ addressed Ms. Miller's contention that the VE must or should use O*NET (the "Occupational Information Network)[1] because the Dictionary of Occupational Titles is outdated and unreliable. The ALJ stated that based on the claimant's pre-hearing objection letter, she obviously is familiar with the general sources of information that VEs rely upon and would have the opportunity to test the VE's opinion during the hearing:  "Clearly the [claimant's] representative is familiar with the general sources of information relied upon by vocational experts" and "has the ability to ascertain the accuracy of the vocational expert's testimony and to impeach that testimony if it should conflict with data that is publicly available."  (*Id*.).  The ALJ further stated that under Social Security Ruling 00-4p, the Agency, in making disability determinations,

---

[1]     O*NET is a database that has been developed "under the sponsorship of the U.S. Department of Labor/Employment and Training Administration through a grant to the North Carolina Department of Commerce." *See* https://www.onetcenter.org/overview.html. It is described as "the nation's primary source of occupational information."  *Id*.

relies primarily on the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (SCO), for information about "the requirements of work in the national economy." (R. 323). Finally, the ALJ ruled that he "takes judicial notice of the DOT and the SCO thus, the [claimant's] representative's Objection to the vocational expert's use of the DOT for estimating job numbers is OVERRULED." (*Id.*)

At the hearing, the VE testified that three jobs in the DOT are consistent with the functional capacity the ALJ described in his hypothetical question. He explained that they are light, unskilled jobs, and that he reduced the numbers available in the economy to account for the limitation on "foot-time" in the hypothetical question. The VE stated that his opinions were based on his professional experience, including that he has placed individuals in the jobs and "seen those specific jobs done as a vocational expert." (R. 73-76). The ALJ credited the VE's testimony and found that Ms. Miller is capable of performing these three jobs: Office Helper (DOT #239.567-010), Routing Clerk (DOT #222.587-038), and Checker (DOT #232.687-010). The parties agree that the DOT characterizes each of these jobs as unskilled, consistent with the RFC.

Ms. Miller's assertion of error—that the ALJ was required to address in his decision her post-hearing objection that the jobs should be considered as semiskilled or skilled jobs because O*NET purportedly classifies them in that category—is not well-taken because the ALJ made clear in his pre-hearing response to her objections

that he "takes judicial notice of the DOT and the SCO," and he overruled the objection that the DOT should not be used. (R. 323).

Ms. Miller's contention in her reply brief that she could not have anticipated at the hearing the skill requirements under the DOT of jobs the VE might opine about (until the VE testifies, the specifec jobs are unknown) and she thus did not have an opportunity to properly question the VE about whether the jobs reliably may be classified today as requiring a higher skill level is also not well-taken. Ms. Miller's suggestion that she did not have the ability to ask the VE whether he had cross-walked the DOT numbers against O*NET for purposes of determining whether skill levels (or other job characteristics) have changed, or whether he would change his opinion if O*NET indicated higher skill levels, is not persuasive. In fact, obvious questions to a VE would include the date any particular DOT-numbered job was last updated, whether there is other information (like O*NET or the VE's own experience) indicating the job has changed in skill level, and whether the VE did or did not (and why or why not) take that information into account in giving his opinion.

Moreover, the VE testified about cross-walking the DOT numbers through O*NET for purposes of evaluating jobs numbers (he selected various DOT titles, crosswalked them through O*NET, came up with a cluster of jobs and determined which jobs are still in existence, R. 74). That testimony itself should have cued the claimant's counsel to address whether there was reason to believe that the jobs

under the DOT numbers are now performed at a higher level according to O*NET, or any other source counsel wanted to discuss with the VE.

Finally, the ALJ's statement in his pre-hearing ruling that Social Security Ruling 00-4p allows the Agency to rely on the DOT for information about work requirements is correct. *See also Overman v. Astrue,* 546 F.3d 456, 462-63 (7th Cir. 2008) (addressing ALJ's reliance on VE testimony that is consistent with the DOT and need to address any conflicts between the VE's testimony and the DOT if they are properly raised). The court cannot find that the reliance on the DOT for skill level was improper. The ALJ's lack of response to the claimant's post-hearing objection about reliance on the DOT for skill level, if error at all, is harmless because the court is convinced that the ALJ would make the same decision even if directed on remand to address the VE's (and ALJ's) reliance on the DOT for skill level. *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless; we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. That would be a waste of time and resources for both the Commissioner and the claimant.")

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Ms. Miller was not disabled.

So ORDERED.

Dated: March 22, 2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system